**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHAMBERS OF**<br>**MICHAEL A. SHIPP**<br>**UNITED STATES MAGISTRATE JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 2042**<br>**NEWARK, NJ 07102**<br>**973-645-3827** |

**Not for Publication**

**LETTER OPINION & ORDER**

November 9, 2011

**VIA CM/ECF**
All counsel of record

    Re:    **PSN Illinois, LLC v. Abbott Labs., Inc., et al.**
            **Civil Action No. 11-1577 (SRC)(MAS)**

Dear Counsel:

This matter comes before the Court by way of Plaintiff PSN Illinois, LLC's ("Plaintiff" or "PSN") petition to compel the production of documents by non-party Novartis Pharmaceuticals Corporation ("Respondent" or "NPC") filed on March 21, 2011. (Docket Entry Number ("Doc. No.") 1-2 ("Pl.'s Moving Br.").) On April 18, 2011, NPC filed opposition to Plaintiff's petition. (Doc. No. 8 ("Resp.'s Opp'n Br.").) For the reasons set forth below, Plaintiff's application is denied without prejudice.

**I.    BACKGROUND**

This Court is to decide the limited issue of PSN's petition to compel the production of documents from NPC. The underlying matter, which is currently pending before the United States District Court for the District of Illinois, Eastern Division, concerns three patents of which

PSN is the holder (the "PSN Patents"), and allegations of patent infringement.[1] Specifically, PSN alleges that Abbott Laboratories, Inc. and Abbott Bioresearch Center, Inc. (collectively "Defendants" or "Abbott") infringed the PSN Patents "through the development of certain drug compounds intended to treat diseases such as multiple sclerosis and rheumatoid arthritis" using S1P2 receptor technology. (Doc. No. 1-4 ("3/10/11 Mazza Aff.") ¶ 2; Doc. No. 1-4 Ex. A ("Amended Complt.")[2] ¶ 9.)

On February 21, 2011, PSN served NPC with a subpoena ("Subpoena") from this Court in connection with its patent infringement suit, compelling production of "[c]opies of all licenses between [NPC] and any third parties concerning the development, sale or use of Fingolimod, Gilenia [sic] or FTY720, as well as licenses with third parties relating to any use of S1P receptors." (3/10/11 Mazza Aff. Ex. D 1, 7.) According to the inventor of Plaintiff's patents, Alexander John MacLennan, Gilenya® is an "oral drug compound" used for treating multiple sclerosis. (Doc. No. 1-3 ("3/7/11 MacLennan Aff.") ¶ 3.) Fingolimod ("FTY720") is the active agent in Gilenya®, and acts similar to the compound protected by PSN's patents insofar as it requires the use of S1P2 technology. (3/7/11 MacLennan Aff. ¶ 3.) PSN seeks the documents requested in the petition to establish a reasonable royalty rate for use of its S1P2 technology, which PSN believes is necessary to prove damages in the underlying matter. (Doc. No. 16 ("Pl.'s Reply Br.") 1.) NPC objects to the Subpoena. (see Resp.'s Opp'n Br. 6.)

---

[1] The patents at issue in the underlying case are U.S. Patent Nos. 5,585,476, 5,856,443 and 6,518,414. (3/7/11 MacLennan Aff. ¶ 2.) These patents "involve polynucleotide molecules which encode a subclass of G-protein coupled receptors ('GPCRs') known as 'S1P2' polypeptides. GPCRs such as S1P2 receptors allow cells to communicate with each other, and can be used to direct cells to perform certain basic functions such as to replicate or to stop replicating. S1P2 is a member of the S1P receptor sub-family of GPCRs which consists of the following five polypeptide molecules: S1P1, S1P2, S1P3, S1P4 and S1P5." (*Id.*)

[2] An Amended Complaint was filed by Plaintiff in the underlying matter on September 8, 2010, and a Revised Amended Complaint was filed on September 15, 2010.

The compound fingolimod was discovered and developed by Yoshitomi Pharmaceutical Industries, Ltd. ("Yoshitomi") in the early 1990s, which "now markets the drug under the trade name Gilenya®."[3] (Resp.'s Opp'n Br. 5.) In September 1997, Yoshitomi and Novartis Pharma AG, a company affiliated with NPC, entered into a license agreement for the rights to fingolimod (the "Gilenya® license"). (Doc. No. 8-1 ("Boglioli Decl.") ¶ 5.) The FTY720-like drug's value, "comes from [the drug's] ability to act as [a] powerful immunosuppressant[] while producing relatively little side effects." (Pl.'s Reply Br. 3.) While it was known at the time NPC entered into the Gilenya® license that "[f]ingolimod may be effective in the treatment of transplant rejection and autoimmune diseases such as multiple sclerosis," the mechanism by which it produced these effects was unknown. (3/7/11 MacLennan Aff. ¶ 4.) Fingolimod was tested against the S1P family of receptors for the first time in 2002. (3/7/11 MacLennan Aff. ¶ 4; Resp.'s Opp'n Br. 5.) The test results demonstrated that fingolimod has "activity against S1P receptors... [but not] against the S1P2 receptor, the only receptor PSN's patents claim." (Resp.'s Opp'n Br. 9; 3/7/11 MacLennan Aff. ¶ 3.)

## II.  LEGAL STANDARD & ANALYSIS

Under Federal Rule of Civil Procedure 26(b), a court may compel discovery of any matter relevant to a party's claims, defenses, or the subject matter involved in the action, provided that the court finds good cause. "Courts have construed this rule liberally, creating a broad vista for discovery 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). When determining whether to enforce a subpoena and compel the production of

---

[3] The application for U.S. Patent No. 5,604,229 was filed on October 18, 1993, and was issued on February 18, 1997. (Resp.'s Opp'n Br. 5.)

3

documents, a court must consider the relevance and scope of the requested information. *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. 08-2681, 2008 WL 4952445, at *2 (Nov. 18, 2008). In so doing, a court must be mindful that relevance is a broader inquiry at the discovery stage than at the trial stage. *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

The party seeking discovery bears the burden of "showing that the information sought is relevant to the subject matter of the action and may lead to [the production of] admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (citing *Nestle Foods Corp.*, 135 F.R.D. at 105). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Indeed, discovery may encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on[,] any issue that is or may be in the case." *Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004) (quoting *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989) (internal citations omitted)). Notably, non-party discovery "require[s] a stronger showing of relevance than for simple party discovery." *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).

While the scope of discovery may be broad, it is not boundless. When the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Accordingly, a discovery request may be denied if a court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (i) the unreasonably cumulative or duplicative

effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C); *see also Bayer AG*, 173 F.3d at 191.

Here, Plaintiff asserts that the Court should enforce the Subpoena because the document requested, the Gilenya® license,[4] is a comparable industry license relevant to proving a reasonable royalty in the underlying case. (3/7/11 MacLennan Aff. ¶ 5.) According to Plaintiff, "[l]icenses relating to any patent that concerns S1P receptors are relevant to this case[,]" and must be subpoenaed because NPC's Gilenya® drug activates S1P receptors, and "the established profitability of the product under the patent and [the] industry rate [of] comparable licenses" is relevant to calculating a reasonable royalty. (Pl.'s Moving Br. 2-3 (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971)).) While PSN concedes that the mechanism by which fingolimod produces its effects was not known at the time NPC and Yoshitomi entered into the licensing agreement, PSN nonetheless contends that it is the value of fingolimod-like drugs that is relevant, not the mechanism of the compound fingolimod. (*Id.* at 3-4.) According to Plaintiff, the Gilenya® license "should provide a 'floor' estimation" of the value of fingolimod-like drugs on the market. (Pl.'s Reply Br. 3; 3/7/11 MacLennan Aff. ¶ 5.) Since

---

[4] While Plaintiff requests a broader scope of documents in the Subpoena, after several communications between the parties it appears that Plaintiff has since limited its document demands to the Gilenya license. In NPC's response to the Subpoena, NPC asserted *inter alia* that it "does not have any 'licenses with third parties relating to any use of S1P receptors.'" (Doc. No. 1-4, Ex. C ("NPC's Response and Objections") 3.) PSN disputes this contention as to NPC's Gilenya license®, which it asserts is relevant to determining damages in the underlying claim. (Doc. No. 1-4, Ex. E; *see also* Pl.'s Moving Br. 2; Resp.'s Opp'n Br. 6.) Accordingly, PSN specifically seeks production of the Gilenya® license.

fingolimod was patented in 1997, many additional studies have been published that indicate that it has "even greater potential as an immunosuppressant," and no published studies have decreased its value. (3/7/11 MacLennan Aff. ¶ 3.) PSN asserts that the Gilenya® license is relevant to assessing the potential value of the drugs Abbott planned to develop, and thus, relevant to determining a reasonable royalty rate via hypothetical negotiations between PSN and Abbott for the use of PSN's technology. (Pl.'s Reply Br. 2-3.)

NPC, however, vehemently opposes Plaintiff's position. First, NPC argues that the Gilenya® license "does not 'relat[e] to any patent that concerns S1P receptors,'" nor were any S1P receptors used in the discovery or development of fingolimod, including PSN's patented S1P2 technology. (Resp.'s Opp'n Br. 10-11 (citing Pl.'s Moving Br. 2.)) Furthermore, fingolimod is a drug compound, whereas PSN's patented technology claims nucleotide sequences. (*Id.* at 11.) Second, Respondent argues that the information could have been obtained through other discovery. (Doc. No. 19 ("Resp.'s Letter") 1.) NPC contends that it should not be forced to disclose information because PSN was unable to obtain it directly from Abbott in the underlying matter. (*Id.*) Additionally, NPC asserts that PSN has at least five licenses relevant to its underlying claims, and thus, the information is otherwise available by and through alternative sources. (Resp.'s Opp'n Br. 12.) Finally, NPC contends that it should be afforded the same protection that Abbott was afforded by the Illinois Court, which denied PSN's motion to disclose "highly sensitive information" obtained from Abbott to NPC's counsel, finding the risk of disclosure outweighed the benefits. (Doc. No. 18, Transcript of May 5, 2011 proceedings before the Northern District of Illinois, Eastern Division ("Tr.") 8:17, 8:20-21.)

PSN relies on the market value of Gilenya®-like drugs to establish the relevance of the Gilenya® license to the underlying matter. However, NPC asserts that the Gilenya® license is

irrelevant because of the mechanical differences between Gilenya's® development and the drugs Abbott was developing when the alleged patent infringement occurred. This Court finds that the Gilenya® license may be a relevant factor in the determination of a reasonable royalty in the underlying matter. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003); *accord Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971); *see also In re Gabapentin Patent Litig.*, No. 00-2931, 2011 WL 1807448, at *2, (D.N.J. May 12, 2011) ("A reasonable royalty 'may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." (citing *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995)).

However, Plaintiff has not shown that the information PSN seeks was not obtainable by other means. NPC states that PSN has five licenses which are relevant to the underlying case. (Resp.'s Opp'n Br. 9.) This assertion is unanswered by Plaintiff in its reply; accordingly, the Court has no reason to question NPC's assertion. Furthermore, Plaintiff had an opportunity to discover at least one of Abbott's license agreements. (Tr. 5:23-25.) Therefore, the Court finds that Plaintiff's opportunity to otherwise discover the information sought, weighs against compelling NPC to disclose its Gilenya® license, especially considering the burden and injury that may result to non-party NPC if the license is ordered to be produced.

Finally, particularly because the information requested is relevant to the determination of damages, and the merits of the underlying case have not yet been adjudicated, the Court is hesitant to require NPC to disclose information that is "highly sensitive and commercially important" to the company. (Resp.'s Opp'n Br. 4.) As a non-party to the underlying action, NPC should be afforded the same protections as those afforded by the Illinois Court to Abbott,

which did not compel disclosure of confidential documents by Plaintiff to NPC's counsel. (Tr. 8:12-23.) Although Plaintiff has suggested that any disclosed information could be designated as confidential material under the existing Protective Order in the underlying case, this would not protect NPC from disclosure of its Gilenya® license to future competitors.[5] *See Littlejohn v. Bic Corp.*, 851 F.2d 673 (3d Cir. 1988) (public gained right of access to confidential documents even though documents were under protective order). Therefore, in accordance with Federal Rule of Civil Procedure 26(b)(2)(C), the Court finds that the burden of disclosure on NPC at this juncture outweighs the benefit to PSN.

### III.   CONCLUSION

Based on the foregoing, and for good cause shown, it is ORDERED that Plaintiff PSN's petition to compel the production of documents by non-party NPC (Doc. No. 1) is DENIED without prejudice.

_____
MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE

---

[5] Pursuant to Federal Rule of Civil Procedure 26(c), upon a finding of good cause, this Court may issue a protective order limiting the scope of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [an order] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1), 26(c)(1)(G). A protective order issued by this Court would afford NPC no more protection than the existing protective order in the underlying matter.